Below is an opinion of the court.

_David W. Hercher_
_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| **Consolidated Estate of Former W2W Entities**, formerly known as Wall to Wall Tile & Stone, LLC (Case No. 19-32600), Wall to Wall Tile & Stone – Oregon LLC (Case No. 19-32599), and Wall to Wall Tile & Stone – Idaho LLC (Case No. 19-32603), | Case No. 19-32600-dwh7  MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1] |
| Debtors. | |
| **Amy Mitchell**, trustee, | Adv. Proc. No. 22-03042-dwh |
| Plaintiff, | |
| v. | |
| **Tyler Glenn Kruckenberg** and **Angela Kruckenberg** aka Angela Santiago, husband and wife, and | |

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION etc.

## I.      Introduction

Plaintiff, Amy Mitchell, moves for summary judgment on some of her claims against defendants Tyler and Angela Kruckenberg. Because the Kruckenbergs share a last name, I will refer to them by their first names.

This action relates to what is now a consolidated bankruptcy estate, the successor to three formerly separate estates, those of debtors Wall to Wall Tile & Stone, LLC, Wall to Wall Tile & Stone – Oregon LLC, and Wall to Wall Tile & Stone – Idaho LLC. I'll call the first debtor the lead debtor, the second the Oregon debtor, and the third the Idaho debtor.

Mitchell, the chapter 7 trustee of the consolidated estate, seeks partial summary judgment that she is entitled to recover certain prepetition and postpetition payments by debtors to or for the benefit of the Kruckenbergs. The motion seeks no relief for payments made before 2016, because she concedes the existence of a factual dispute over debtors' solvency then. It also seeks no relief against defendant W2W Stone Holdings, LLC.

For the reasons below, I will grant the motion in part. Mitchell may avoid and recover from Tyler the $5,000 preference payment and the $21,391.56 postpetition payment. For the remaining payments, other than those directly to Angela, Mitchell has shown all avoidance elements—other than insolvency.

## II.    Procedural background

### A.    Claims

The complaint includes six claims for relief, the first five of which are against the Kruckenbergs. In the first claim, Mitchell seeks avoidance under 11 U.S.C. § 547 of preferential transfers to Tyler. In the second, she seeks avoidance under 11 U.S.C. § 544(b)(1) and Oregon Revised Statutes § 95.240(1) of fraudulent transfers to Tyler and Angela for four years before the petition date, July 16, 2019. In the third, in the alternative to the second, she seeks avoidance under 11 U.S.C. § 548 of the fraudulent transfers made within two years before the petition date. In the fourth, she seeks avoidance of a postpetition transfer to Tyler. And in the fifth, she seeks recovery and preservation of the avoided transfers.

### B.    Motion for partial summary judgment

Mitchell's motion seeks partial summary judgment (1) on her first claim to avoid preferential payments to Tyler of $60,000, (2) on her second and third claims, in part, by avoiding payments to the Kruckenbergs in or after 2016 of $1,792,168.67, (3) on her fourth claim, to avoid the postpetition payment to Tyler of $21,391.56, and (4) on her fifth claim, to recover and preserve the avoided payments.

Mitchell made and filed a declaration[2] in support of her motion. The Kruckenbergs have not challenged the admissibility at trial of her

---

[2] ECF No. 33.

Page 3 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION etc.

declaration, and Federal Rule of Civil Procedure 56 only requires materials for which admission in evidence at trial is possible; it expressly does not require that the materials now be presented in admissible form. There is no reason to doubt that all of her allegations and attached exhibits could be made admissible.

Tyler objects to the motion.[3] Although he asserts that there are genuine disputes of fact, he presents no evidence to contradict Mitchell's evidence, and he points to no disputes of fact apparent from Mitchell's evidence. Both he and Angela have forfeited the opportunity to present counterevidence.

Tyler's response also suggests that this action should proceed to trial because a trial has already been scheduled, with Mitchell's consent. But by agreeing to a trial date, Mitchell did not waive the right to seek a resolution of any of her claims before trial.

## III. Facts

### A. *Tyler's role at debtors*

Tyler was "the owner and managing member" of debtors.[4]

### B. *Prepetition payments*

#### 1. Preferences

Debtors made two loan payments totaling $60,000 to Tyler during the year before the petition date.[5] The payments were $55,000 on February 11,

---

[3] ECF No. 35.
[4] ECF No. 33 at 4 ¶ 15.
[5] ECF No. 33 at 3 ¶ 8.

2019, and $5,000 on June 19, 2019.[6] The payments were out of the ordinary course of debtors' businesses.[7] Unsecured creditors will not receive payment in full of their claims.[8]

## 2. Fraudulent transfers

Tyler bought a recreational vehicle,[9] for which debtors funded a $100,000 down payment.[10] Tyler financed the price balance with a loan from Bank of the West BNP Paribas.[11] Debtors made periodic loan payments to the bank totaling $49,186.50.[12] The bank repaid Mitchell $41,734,[13] leaving unrecovered $7,452.50.

Tyler bought a 2013 Jaguar vehicle[14] with a loan from Unitus Community Credit Union.[15] Debtors paid Unitus $23,209.80.[16] Unitus repaid Mitchell $18,568,[17] leaving unrecovered $4,641.80.

---

[6] ECF No. 33 at 3 ¶ 10; Case No. 19-32600 ECF No. 93 Att. B.
[7] ECF No. 33 at 3 ¶ 11.
[8] ECF No. 33 at 3 ¶ 12.
[9] ECF No. 33 at 5 ¶ 19.
[10] ECF No. 33 at 6 ¶ 21.
[11] ECF No. 33 at 6 ¶ 22.
[12] ECF No. 33 at 6 ¶ 23.
[13] ECF No. 33 at 6 ¶ 24.
[14] ECF No. 33 at 6 ¶ 25.
[15] ECF No. 33 at 7 ¶ 26.
[16] ECF No. 33 at 7 ¶ 27.
[17] ECF No. 33 at 7 ¶ 28.

Tyler bought a 2012 Dodge truck[18] with a loan from Ally Financial, Inc.[19] Debtors paid Ally $13,654.95.[20] Ally repaid Mitchell $10,924,[21] leaving unrecovered $2,730.95.

Debtors made 24 payments to Pro-Caliber Motor Sports, Inc., totaling $40,404.33, of which $270.99 was paid before 2016[22] Debtors recorded the payments as member draws.[23] Pro-Caliber repaid Mitchell $29,227,[24] leaving unrecovered $10,906.34.[25]

Debtors paid premiums on Farmers Insurance policies for Tyler's residence and vehicles totaling $24,690.20, of which $3,091.62 was paid before 2016.[26] Farmers repaid Mitchell $17,619,[27] leaving unrecovered $3,979.58.[28]

Debtors paid general personal expenses on behalf of the Kruckenbergs totaling $263,596.03, of which the amount paid in and after 2016 was $242,004.35.[29]

---

[18] ECF No. 33 at 7 ¶¶ 29–30, 33.
[19] ECF No. 33 at 7 ¶ 31.
[20] ECF No. 33 at 7 ¶ 32.
[21] ECF No. 33 at 7–8 ¶ 34.
[22] ECF No. 33 at 8 ¶ 35.
[23] ECF No. 33 at 8 ¶ 36.
[24] ECF No. 33 at 8 ¶ 37.
[25] ECF No. 33 at 8 ¶ 38.
[26] ECF No. 33 at 8 ¶ 41.
[27] ECF No. 33 at 9 ¶ 42.
[28] ECF No. 33 at 9 ¶ 43.
[29] ECF No. 33 at 9 ¶ 45.

Debtors made payments to Angela of $320,328.72, of which $279,282.72 was paid in and after 2016.[30] On the list of the payments, Exhibit 4 to Mitchell's declaration, many entries bear the notation "employee wages" or "accrued payroll." Mitchell declared that she had "found no evidence that Angela Kruckenberg provided meaningful services to Debtors that would justify these payments."[31] Mitchell specifically found no evidence that Angela "developed and built [a] proprietary business development process earning the company many million in contracts," as Tyler claimed in a letter filed in this action.[32]

Debtors made noncompensation payments to Tyler of $598,176.92,[33] of which the amount paid in and after 2016 was $449,376.92.[34] Debtors received no value for those payments.[35]

Debtors made tax payments on behalf of the Kruckenbergs of $799,035.88, of which the amount paid in and after 2016 was $691,247.51.[36]

## C.  *Insolvency*

### 1.    **2016 and 2017**

For 2016 and 2017, debtors engaged certified public accounting firms to issue reviewed consolidated financial statements.[37] In the 2016 balance sheet,

---

[30] ECF No. 33 at 9 ¶ 47.
[31] ECF No. 33 at 10 ¶ 48.
[32] ECF No. 33 at 10 ¶ 49; ECF No. 13 at 4.
[33] ECF No. 33 at 10 ¶ 51.
[34] ECF No. 33 at 11 ¶ 53.
[35] ECF No. 33 at 11 ¶ 54.
[36] ECF No. 33 at 11 ¶ 56.
[37] ECF No. 33 at 12 ¶ 58, Exs. 7–8.

Page 7 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION etc.

the numbers for assets, liabilities, and member's equity (or deficit) are $12,399,863, $11,644,244, and $755,619. For 2017, those numbers are $17,619,169, $15,768,295, and $1,850,874.[38]

In early 2017, debtors stopped paying their primary supplier of hard-surface countertop slabs, Cosmos Granite (West), LLC. Cosmos claimed that debtors owed it approximately $5.1 million in unpaid invoices as of December 31, 2017, and commenced collection litigation. At a time not specified by Mitchell, debtors stipulated to a judgment of $5.5 million in favor of Cosmos. In debtors' 2018 financial statement, they included a $1.5 million "legal contingency" liability to Cosmos.[39]

On September 14, 2017, Julie Irons, debtors' former bookkeeper, sent Tyler a letter addressing the circumstances of her resignation earlier that year. She said that she had prepared an inventory spreadsheet as of December 31, 2016, with an inventory balance of $2,284,531.97, but he "manipulated" the spreadsheet to increase the balance to $3,239,277.79, a difference of $954,745.82.[40]

### 2. 2018

Debtors did not engage an accountant to prepare reviewed financial statements for 2018 or 2019.[41]

---

[38] ECF No. 33 at 12, 16, ¶¶ 62, ¶ 74.
[39] ECF No. 33 at 15 ¶ 72.
[40] ECF No. 33 at 13 ¶¶ 64–66, Ex. 11 at 2.
[41] ECF No. 33 at 12 ¶ 59.

Debtors' 2018 federal income-tax return was prepared by an accountant retained by debtors and presents financial information on a consolidated basis "due to the preparer's inability to disaggregate data for the various affiliated entities." Mitchell attached to her declaration a page from what looks like the lead debtor's 2018 IRS Form 1120S, the federal income-tax form for subchapter S corporations, including Schedules K and L.[42] Schedule L is the taxpayer's "Balance Sheet per Books" as of the beginning and end of the tax year. In the balance sheet, line 15 is total assets, and lines 16 through 21 are liabilities, not separately totaled. The balance sheet does not have a line labeled "net assets." But subtracting total liabilities from total assets leaves net assets at the beginning and end of 2018 of $2,851,322 and $-10,569,890.[43]

### 3.  2019

Mitchell was responsible for preparing and filing debtors' 2019 tax returns. She employed an accountant who prepared consolidated returns based on debtors' books and records.[44] As she did for 2018, Mitchell attached to her declaration a page from what looks like the lead debtor's 2018 IRS Form 1120S. In that return's balance sheet, the beginning figures match

---

[42] ECF No. 33 at 12 ¶ 60, Ex. 9.
[43] ECF No. 33 at 12 ¶ 62.
[44] ECF No. 33 at 12 ¶ 61, Ex. 10.

the 2018 year-end figures, and the 2019 year-end net assets amount is

$-18,428.49.[45]

### D.    Postpetition payment

After the petition date, Tyler received and deposited a tax refund of

$21,391.56 payable to the lead debtor.[46]

### E.    Conversion from chapter 11 to chapter 7

The three main cases were converted from chapter 11 to chapter 7 on

April 6, 2020,[47] after which Mitchell was appointed trustee.

### F.    Substantive consolidation

On May 8, 2020, Mitchell sent a four-page notice of her intent to take

several actions, including to "substantively consolidate the Debtors into the

Lead Case, effective as of the Petition Date of July 16, 2019 . . .." Mitchell

alleged in the notice that (1) debtors' banking, administration, and operations

were handled by the lead debtor, based in Washington State; (2) the Idaho

and Oregon entities filed their own bankruptcy cases because they are

separate entities based in separate locations; (3) all assets used in the Idaho

and Oregon locations were paid for and owned by the lead debtor, (4) all

services performed at the Idaho and Oregon locations were billed by the lead

debtor, which received payment, (5) all liabilities arising from the Idaho and

Oregon operations were booked as liabilities of the lead debtor, (6) payment

---

[45] ECF No. 33 at 16 ¶ 74.
[46] ECF No. 33 at 16 ¶ 75, Ex. 14.
[47] Case No. 19-32600 ECF No. 350.

for liabilities arising at the Idaho and Oregon locations were made by the lead debtor, and (7) all claims against the Oregon and Idaho debtors are joint claims against all three debtors. The notice recipients included debtors, all creditors, Tyler, and Angela; Tyler and Angela received it at an address in Washington State.[48] There were no objections to the notice.

On May 27, 2020, Mitchell moved to substantively consolidate the three cases.[49] In support of the motion, she restated the reasons she put in the notice and added legal argument. On July 21, 2020, the substantive-consolidation motion was granted by an order that (1) "[t]he Debtors' bankruptcy cases . . . are substantively consolidated effective as of July 16, 2019 . . ."; (2) "[a]ll assets and liabilities of the Debtors existing as of the Petition Date shall be consolidated for the purposes of the bankruptcy cases, and shall be deemed assets and liabilities of the bankruptcy cases . . .."[50]; and (3) "[t]he bankruptcy estates shall be consolidated into one bankruptcy estate . . .."[51]

## IV.   Analysis

### A.   *Summary judgment standard*

Under Rule 56, summary judgment is available if there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law.

---

[48] Case No. 19-32600 ECF No. 369 at 4.
[49] Case No. 19-32600 ECF No. 387.
[50] Case No. 19-32600 ECF No. 413 at 2 ¶ 2.
[51] Case No. 19-32600 ECF No. 413 at 2 ¶ 4.

As the Supreme Court's held in its 1986 decision in *Anderson v. Liberty Lobby, Inc.*, a fact dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[53] The reasonable-jury standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a): a trial judge must direct a verdict if, under the governing law, "there can be but one reasonable conclusion as to the verdict. . . .. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed."[54]

Evidence "such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor" suffices to defeat summary judgment.[55] A summary judgment opponent "does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance."[56]

### B. Preferences

Under 547(b), a transfer is avoidable as a preference if (1) the transfer was made to an insider within a year before the petition date, (2) the debtor was insolvent at the time, (3) the payment was to a creditor on account of an antecedent debt, and (4) as a result, the creditor received more than the creditor would otherwise have received in bankruptcy.

---

[53] 477 U.S. 242, 248 (1986).
[54] *Anderson*, 477 U.S. at 250–51 (internal citations omitted).
[55] Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Reza v. Pearce, 806 F.3d 497, 505 (9th Cir. 2015)).
[56] Johnson v. Hix Wrecker Svc., Inc., 651 F.3d 658, 662 (7th Cir. 2011).

In bankruptcy, "insider" includes a person in control of a corporate debtor.[57] "Corporation" includes an "unincorporated company or association"[58] and includes an unincorporated limited liability company, or LLC.[59] Debtors are LLCs. Tyler was the "managing member" of each debtor. A trier of fact must infer from Tyler's title—owner and manager—that he was a person in control of debtors and was thus an insider, so the preference payments recoverable from him include those made during the entire prepetition year.

A debtor is presumed to have been insolvent during the 90 days before the petition date.[60] The $5,000 payment on June 19, 2019, was within 90 days before the petition date. The $55,000 payment was on February 11, 2019, before the period of presumed insolvency.

All elements of preference avoidance are established for the $5,000 payment, and all elements except insolvency are established for the $55,000 payment. After addressing the elements of the constructively fraudulent transfer claim other than insolvency, I will address insolvency as an element of avoidance of both the $55,000 preference payment and the constructively fraudulent transfers.

---

[57] 11 U.S.C. § 101(31)(B)(iii).

[58] 11 U.S.C. § 101(9)(A)(iv).

[59] *In re* Longview Aluminum, L.L.C., 657 F.3d 507, 509 n.1 (7th Cir. 2011); The Village at Lakeridge, LLC v. U.S. Bank National Association (*In re* Vill. at Lakeridge, LLC), No. BAP NV-12-1456, 2013 WL 1397447, *4 n.8 (9th Cir. B.A.P. Apr. 5, 2013).

[60] 11 U.S.C. § 547(f).

## C.     *Constructively fraudulent transfers*

### 1.     **Authority for recovery**

In the motion, Mitchell invokes 544(b)(1), which permits a trustee to bring certain state-law actions, including to avoid fraudulent transfers.[61] She relies on Oregon's Uniform Fraudulent Transfer Act (UFTA), Oregon Revised Statutes §§ 95.200 through .310, while expressing uncertainty whether, in light of substantive consolidation of the main cases, the law of Oregon, Washington, or Idaho would apply. She argues without contradiction that the state law applicable to fraudulent transfers by all three debtors would be that of Oregon at least or not materially different than that of Oregon.

Mitchell relies specifically on Oregon Revised Statutes § 95.240(1), allowing a creditor to avoid a payment made without receiving a reasonably equivalent value while the debtor was insolvent.

### 2.     **Amounts recoverable from Tyler, Angela, and both of them**

Mitchell seeks to avoid and recover from the Kruckenbergs payments by debtors for which debtors received nothing. Some payments were directly to the Kruckenbergs, and others were to third-party payees for the Kruckenbergs' benefit. Under 11 U.S.C. § 550(a)(1), both the recipient and the beneficiary of an avoided transfer are jointly and severally liable for recovery of the payments. Mitchell has recovered portions of some payments

---

[61] *In re* Acequia, Inc. 34 F.3d 800, 807 (9th Cir. 1994); 5 Collier on Bankruptcy ¶ 546.02.

to the third-party payees, and she seeks to avoid and recover from the Kruckenbergs the unrecovered portions of the payments.

Mitchell argues that, because "the transfers were received by or otherwise benefitted the Kruckenbergs and their household (including their children and pets), both Defendants should be held jointly and severally liable for the transfers."[62] She points to the Kruckenbergs' failure to deny complaint paragraph 21, which alleges that "[t]he Fraudulent Transfers were made solely for the personal benefit of the Individual Defendants," the Kruckenbergs.[63] But the admission of that allegation establishes only that no one other than the Kruckenbergs benefitted from the payments; it doesn't establish that they both benefitted from all the payments.

Instead, the evidence—the declaration by Mitchell herself—demonstrates that some of the payments benefitted Tyler, others benefitted Angela, and still others benefitted both of them. Tyler benefitted by $639,088.09, the sum of $107,452.50 paid for his RV, $4,641.80 paid for his Jaguar, $2,730.95 paid for his Dodge truck, $10,906.34 paid to Pro-Caliber Motor Sports, $3,979.58 paid to Farmers Insurance, and $449,376.92 paid to him from and after 2016 other than as compensation. The declaration mentions no benefit to Angela from those payments. Angela benefitted by $279,828.72 paid to her in and after 2016; the declaration likewise mentions no benefit to Tyler from those

---

[62] ECF No. 32 at 6–7.
[63] ECF No. 32 at 10.

payments. Tyler and Angela jointly benefitted by $933,251.86, the sum of $242,004.35 paid for their general personal expenses and $691,247.51 paid for their taxes.

Mitchell has the burden of proof on all elements of the claims in this action, including that debtors received less than a reasonably equivalent value for the payments. For the most part, her evidence demonstrates the lack of value. The exception is for the payments to Angela.

As evidence of the absence of value provided by Angela, Mitchell says she "review[ed] . . . the Debtors' operations and records" and found no evidence that Angela "provided meaningful services" to justify the payments, and she specifically found no evidence that Angela developed the valuable business process that Tyler described in his letter. Mitchell doesn't describe that review or any specific affirmative investigative step she took to determine the nature and value of Angela's services. Mitchell describes the payments to Angela as "wages,"[64] presumably due to the notations "employee wages" or "accrued payroll" on many entries in the payment list Mitchell provided, which is countervailing evidence that at least those payments were in fact earned compensation.

If, at trial, the judge were to hear no evidence of services by Angela other than Mitchell's declaration statements and exhibits, a verdict in Mitchell's favor that Angela had earned none of the payments would not be the sole

---

[64] ECF No. 33 at 5 ¶ 18, at 9 ¶ 46.

"reasonable conclusion as to the verdict." An alternative reasonable conclusion consistent with the absence of documentary evidence of Angela's services is that she worked offsite on special projects, such as the one Tyler described, and reported only to him. Even if that conclusion would explain only the payments that debtors denominated as wages, it would bar a directed verdict on the relief that Mitchell now requests: a determination that none of the payments to Angela was earned. For that reason, Mitchell is not now entitled to summary judgment that Angela did not earn the payments she received.

Setting aside the payments to Angela, Mitchell is entitled to summary judgment that the payments for which she has satisfied all elements of avoidance under 544(b)(1) and 95.240(1), other than insolvency, total $639,088.09 for Tyler and $933,251.86 for both Tyler and Angela.

### D. *Insolvency*

Insolvency is a prerequisite to avoidance of both a preference under 547(b)(3) and a fraudulent transfer under 95.240(1). In bankruptcy, a debtor is insolvent if its debts exceed all of its property "at a fair valuation."[65] Under the Oregon UFTA, a debtor is insolvent if, "at a fair valuation, the sum of" its debts exceed all of its assets.[66]

---

[65] 11 U.S.C. § 101(32).
[66] Or. Rev. Stat. § 95.210(1).

In Mitchell's summary judgment papers, she describes the challenged payments for which insolvency is an element—preferences and constructively fraudulent transfers—as having been made by "debtors." She does not identify which debtor or debtors made the payments. Similarly, she offers evidence of insolvency only of "debtors," but not of each separate debtor at the times of the payments.

## 1. Effect of substantive consolidation

At oral argument, Mitchell's lawyer said that, to establish insolvency, Mitchell relies on the substantive-consolidation order and the evidence used to obtain it. A motion in bankruptcy court, including for summary judgment, must be in writing.[67] A party moving for summary judgment must "show" entitlement to that relief.[68] The judge is required only to consider the materials the parties cite.[69] In view of those requirements, I decline to consider the allegations in the motion for substantive consolidation in deciding whether debtors were insolvent when the fraudulent transfers were made.

Even I were to consider the substantive-consolidation papers, they do not relieve Mitchell of the need to identify the debtor payors and show their insolvency at the time of the payments. The substantive-consolidation order said only that the three "cases . . . are substantively consolidated" as of the

---

[67] Fed. R. Bankr. P. 9013.
[68] Fed. R. Civ. P. 56(a).
[69] Fed. R. Civ. P. 56(c)(3).

petition date, the debtors' assets and liabilities as of the petition date are consolidated "for the purposes of" the three cases, and the three estates are consolidated into one estate. The order didn't say whether or when, at any prepetition time, the three debtors should be treated as one entity. The notice and motion for substantive consolidation alleged essentially that the lead debtor owned all the assets, received all the income, paid all the expenses, and owed all the debts. But the motion didn't allege that those facts had been true for the entire four-year lookback period, and it would not have been necessary to do so to support substantive consolidation.

### 2. Debtors' separate insolvency

The 2016 and 2017 consolidated financial statements show year-end member's equity amounts that are positive but that would become negative (deficits) with the adjustments Mitchell urges, discussed in part IV.D.3 below. And the tax balance sheets show year-end negative net worth in 2018 and 2019.

But nothing on the face of those documents shows the separate financial condition of each debtor. And Mitchell does not explain why I must or could conclude that the insolvency of all three debtors on a consolidated basis is the same as their separate insolvency.

### 3. 2016 and 2017

Even if Mitchell had shown that a single debtor, such as the lead debtor, made all of the payments, owned all the assets, and owed all the debt, to

prevail on the payments in 2016 and 2017, she would still need to overcome the facial year-end solvency on the financial statements for those years, $755,619 for 2016 and $1,850,874 for 2017. She argues for two downward adjustments to those numbers: for 2016 the $954,745.82 by which Irons said Tyler overvalued inventory and for 2017 the $4 million by which the stipulated judgment for Cosmos exceeded the legal contingency debtors had booked. But reasonable minds could differ as to the import of Irons's contention that her inventory figures were correct and Tyler's weren't and debtors' booking their disputed and litigated liability to Cosmos by $4 million less than that liability was fixed in a later stipulated judgment. Mitchell isn't entitled to summary judgment that her proposed adjustments are correct.

### E.   *Actual-intent fraudulent transfers*

As an alternative to avoidance of the fraudulent transfers as constructively fraudulent under 95.240, Mitchell seeks to avoid them under Oregon Revised Statutes § 95.230(1)(a) as having been made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . .."[70] In determining whether a transfer was made with actual intent, the court may consider a statutory list of factors, among others, of which Mitchell relies on five.

---

[70] ECF No. 32 at 18.

Page 20 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION etc.

The first factor that Mitchell relies on is whether the transfer was to an insider.[71] For the same reason that Tyler was an insider under bankruptcy law as a person in control of debtors, he was an insider under the Oregon UFTA.[72] And Angela, as his spouse at the time of the payments, was his relative and thus also an insider.[73]

The second factor is the value of consideration the debtor received for the transfer.[74] In part IV.C.2 above, I determined the amounts of the payments for which debtors received no value.

The third factor is whether the debtor was insolvent at the time of the transfer or became insolvent shortly after the transfer.[75] For the reasons discussed in part III.C above, I cannot determine on summary judgment that debtors were insolvent.

The fourth factor is whether, before the transfer, the debtor was sued or threatened with suit.[76] Mitchell argues that, as to payments in 2017 and later, "Debtors were in litigation with Cosmos." Her declaration says that Cosmos started litigation after the end of 2017 and was later settled, but she doesn't say whether litigation was threatened before it started or when the litigation began or ended. I can't determine that any particular payments,

---

[71] Or. Rev. Stat. § 95.230(2)(a).
[72] Or. Rev. Stat. § 95.200(7)(b)(C).
[73] Or. Rev. Stat. § 95.200(7)(b)(F), (11).
[74] Or. Rev. Stat. § 95.230(2)(h).
[75] Or. Rev. Stat. § 95.230(2)(i).
[76] Or. Rev. Stat. § 95.230(2)(d).

much less all from and after 2017, were made when Cosmos had threatened to sue or had sued.

The fifth factor is whether the transfers were concealed.[77] As evidence of concealment, Mitchell argues that concealment is evidence by debtors' payment of the Kruckenbergs' personal expenses and recording the payments as "member draws." I disagree. The names of many if not all of the third-party payees would cause any reader aware of the nature of debtors' businesses to question whether the payments had been for the benefit of debtors. And the plain meaning of "member draws," as debtors categorized the payments, is that the payments were not made to pay any expense incurred by debtors or otherwise to further any business purpose of debtors but were either loans or capital returns.

Of the five actual-intent factors Mitchell relies on, the Kruckenbergs' insider status and the lack of value to debtors support actual intent, the absence of concealment weighs against actual intent, and insolvency and litigation are neutral. Of the three nonneutral factors, the absence of concealment is a strong indicator of the absence of actual intent. In any case, there's a genuine dispute whether debtors made the payments with actual intent, so Mitchell is not entitled to summary judgment on that alternate theory.

---

[77] Or. Rev. Stat. § 95.230(2)(c).

Page 22 – MEMORANDUM DECISION ON PLAINTIFF'S MOTION etc.

### F. Postpetition payment

Postpetition transfers made without court approval are avoidable under 11 U.S.C. § 549(a). The elements of 549(a) avoidance are satisfied for the $21,391.56 that Tyler received after the petition date.

### G. Recovery and preservation of avoided transfers

If a transfer is avoided, the trustee may recover the property transferred or its value from the entity for whose benefit the transfer was made.[78] The challenged payments for which Mitchell is entitled to summary judgment are the $5,000 preference payment and the $21,391.56 postpetition payment, both made to Tyler. Mitchell is entitled to summary judgment that she may recover those amounts from Tyler.

Any avoided transfer is preserved for the estate with respect to estate property.[79] When an avoided transfer was a payment of money, preservation of the payment provides no practical advantage to the trustee that is not provided by the right to recover the payment from the transferee or beneficiary, which is given effect by a money judgment against the transferee. But Mitchell has requested and is entitled to summary judgment that the avoided payments are preserved.

## V. Conclusion

My determination not to grant relief on the value of Angela's services or on insolvency reflects only that the record does not satisfy the standard for

---

[78] 11 U.S.C. § 550(a)(1).
[79] 11 U.S.C. § 551.

granting summary judgment on those points. That determination should not be interpreted to reflect how evidence would be evaluated at trial.

I will grant Mitchell partial summary judgment that—

1. The June 19, 2019, $5,000 payment to Tyler is avoided under 547.

2. For the February 11, 2019, $55,000 payment to Tyler, the elements of 547 avoidance, other than insolvency under 547(b)(3), are established.

3. The postpetition payment of $21,391.56 to Tyler is avoided under 549.

4. Mitchell is entitled to recover the avoided payments from Tyler.

5. The avoided payments are preserved for the benefit of the estate with respect to estate property.

6. Of the allegedly fraudulent payments for which Mitchell seeks summary judgment, she has established the elements of avoidance under 544(b)(1) and 95.240(1), other than insolvency under 95.210, for payments to Tyler of $639,088.09 and for payments to both Tyler and Angela of $933,251.86.

I will otherwise deny Mitchell's motion.

I will prepare a separate order.

# # #

cc:    Tyler Glenn Kruckenberg
       Angela Kruckenberg